May it please the court, my name is Josh Howard. I'm from Raleigh, North Carolina, and I am privileged to have been appointed to represent Carlos Benson in this consolidated criminal appeal. My colleague, Jeff Gillette from Franklin, North Carolina, represents Jacob Hill, and we have mounted four arguments that you have seen in brief. I would like to address one of them, and then Mr. Gillette would address the other three. The one that I would like to address is the only one that would stand if our claims are granted to merit a new trial. Mr. Gillette will focus on the primarily the sentencing issues that arose from the penalties imposed in this case. Our argument is mainly about Exhibit 11-D. As you have seen in the briefs, this photograph of the crime scene which showed a bloody head wound and the victim killed on the asphalt of a judge from evidence. During the course of the electronic presentation of evidence in that Western District of North Carolina trial, the image was accidentally flashed before the jury. The judge gave a curative instruction and overruled both defendants' mistrial motions. Through the course of then four more witnesses and a hundred pages of trial transcript, juror number six wrote a note to the court, and the note explained that she had had basically a friend who had committed a suicide by a gunshot wound to the head, that seeing that photograph even so briefly had very much disturbed her and that she was unable to focus on the presentation of evidence. Again, the defendants moved for mistrial. The judge declined that and gave again a curative instruction to juror number six. Didn't he also suggest or allow you all to consider excusing her altogether? He did, Your Honor, and that's part of the government's waiver argument where they cite, I think, the Robeson case in their brief. We think that is not applicable here because the remedy we sought was not the excusing of juror number six and using the alternate. It was a mistrial. We understand, but why a mistrial is pretty radical and the District Court acted promptly to address the problem or the issue that was identified by juror number six. So it may not have been what you wanted, but why wasn't it enough? Curative instructions can only go so far, and I think we've seen the limits. Although we presume that juries follow. We do, and the government has asserted that and they're absolutely correct on that point, but curative instructions have their limits, and I think we've seen here in the unique fact pattern of this case that the limits were reached because jurors... Mr. Howard, I mean, there's just no getting around that this was a horrific crime, you know, that it was a murder, and there were some other photos that were introduced into evidence that one could argue were just as terrible from the defense perspective. So it isn't clear to me why this particular photo stands out among the photos that were introduced. We would suggest that that analysis has a difference in the photographs, for instance, from the very clinical, clean autopsy photographs of the same wounds compared to the bloody shirt that was underneath and had been taken off the decedent for treatment on the scene. Those are both substantively different, and then also I would point the Court to the government's pretrial motions trying to get the exhibits admitted. It's page 127 of the Joint Appendix. They offered those pictures for different reasons. What I call the parking lot photographs were offered by the government in that brief for the purposes of connecting the weapon to the wounds and the... I'm sorry, to corroborate... The parking lot photos were offered to corroborate the testimony of law enforcement officers and Mr. Patterson, who's one of the surviving victims. The autopsy photos were, according to their brief, offered for a different purpose, which was to connect the weapon to the wounds and to show that he suffered six different gunshot wounds. So I think for those purposes, for the purposes they were offered and also for the substance of difference, the more grisly nature of the parking lot photos, that analysis fails. Well, didn't the judge ask the lady who was disturbed by the pictures? Didn't he examine her about that a little bit? He did. He also curtailed the defense's examination of her to some extent. And beyond that, they pulled the jury and they had a show of hands that several of them had seen that. So now what we know, because the standard that applies here is whether or not there was a reasonable possibility that the jury's verdict was influenced by improper material. We know this material was improper because he had excluded it. And we know that that happened because she stepped forward and because several of the jurors... She said it bothered her. Correct, Your Honor. She also said she was unable to focus on the presentation of evidence. For several witnesses thereafter. But she was offered... The trial court did follow up with her and ask if she thought she could focus, if she thought she would be able to do her job. Our submission is that the damage was already done and that she might not have been alone because several other jurors raised their hands and said they'd seen the photograph. And they only saw that they'd seen it. They didn't indicate being influenced by it. And this is a very deferential standard of review because the district court knows, has a sense of the dynamic of the trial. We would also point out, Your Honor, that the burden is on the government to show that this was a harmless error. And it's an interesting standard. It's whether or not there was a reasonable possibility that the jury's verdict was improper material. Not reasonable probability, as we often hear. Reasonable possibility. Here we know for sure it was. Because she had been disturbed for at least four witnesses and roughly 100 pages of what is now the transcript. With that, Your Honor, unless you all have further questions, I'd turn aside to Mr. Gillette to make our other arguments. Thank you very much. I'm sorry, Dr. Gillette. Judge Diaz, Judge Duncan, Judge Gibney, good morning. I think it's still morning for a few more minutes. May I please the court? And I am Jeff Gillette and I do represent Jacob Ivan Hill. It's my privilege to represent him and to argue before this court. And to pick up on some of the other issues, as Mr. Howard suggested, I'd like to direct the court's attention for just a couple of minutes to what I'm going to call the carjacking issue, which is to say that the court improperly ruled against the defense motion to dismiss for lack of sufficient evidence as to the offense because it wasn't the purpose of the defendants, of the appellants, to actually steal a car. And I'll turn the court's attention to 18 U.S.C. 2119. Whoever with the intent to cause death or serious bodily harm takes a motor vehicle that's been transported, shipped, received in interstate commerce from the person or the presence of another by force and violence or by intimidation or attempts to do so shall be punished. Those words, the person and the presence, immediately remind us that what we're talking about here is a specie of robbery. We're talking about robbing or stealing a car with violence or with the threat of violence. And that clearly is not what was going on at this particular situation. It seems to me that it sort of clearly was. They made him, they took the car. By threat of violence. What's missing? They didn't. I would, we would allege that they, or argue that they didn't take the car. They wanted the information in the head of the driver, not the vehicle. I think anybody who was following this case would understand there was no evidence before the jury that they wanted the appellant. As a matter of fact, I don't believe anybody would have expected that they would have kept the appellant. They would have dumped the car at the first opportunity. I'm just not clear why that matters. If someone jumps in my car in order to kidnap me and take me somewhere to punish me for my horrible opinions, in all probability he's going to get rid of the car after I'm captured. But does that mean that's not carjacking as well? Judge, you have identified exactly what is carjacking and how the hypothetical that you have presented is different from the case that is in front of you. I don't see that. The purpose is not to take the car. The purpose is to kidnap me. The car, I just happened to be in the car. Oh, oh, I see. So we're talking about the difference between kidnapping and carjacking? No, I'm trying to understand the basis of your argument that it makes some difference that the purpose was to take to keep the car. And so for that, I'll call your attention back to the Applewaith case and the Harris case. And the issue in Applewaith, which I think is probably the closest parallel here, as you remember in that case, the defendants were charged with attempting to assault the victim. And after they had completed the assault, then they saw a work van and said, let's take this and get rid of the body and move on someplace else. The victims in both those cases, I think, were either deceased or unconscious? In the Harris case, the issue as it was presented there was that the decision to kill the victim arose at some point after the defendant had gotten into the vehicle. So I think there, it was a kind of a chronology issue. And I think here, that's why I say here, this is a better analogy to the Applewaith case. The vehicle happened to be a way to get the information out of the head of Mr. Patterson. That is to say, if Mr. Patterson had, had not cooperated, I believe Judge Duncan, you're absolutely right in assuming that he probably would have been the victim of actual violence. But he had to be transported in order to do that. Well, he could have been transported in any vehicle or no, or maybe not even transported. He could have given the location for the, uh, the spot as they referred to it. And the, uh, he didn't have to be there, I thought, because he was the person known to the. I know. I hear what you're saying, Judge Duncan. I believe that that was, was, uh, was their preferred plan, but it certainly wasn't necessary. I mean, one could construct, uh, circumstances or hypotheses in which they could have shown up, waited for Mr. Haymes, the victim to appear, and then hijacked him or kidnapped him or whatever that they chose to do. The, the presence of Mr. Patterson certainly made things more convenient, but it was not at all necessary. Mr. Gillette, maybe I misunderstood your argument. I thought you were, you were contesting the element of intent with respect, with respect to causing serious bodily harm, not intent to steal the car. Thank you, Judge Diaz. You're, you're exactly, that's a great point because there is a case on from this circuit, actually, I think from last year. I'm not sure you answered my question. Which, which intent are you contesting? Is it the intent to cause serious bodily harm or the intent to steal the car? Because I don't think you need to, the government needs to show intent to steal the car. Yeah, it's intent to steal the car. And Judge, I do believe that that's something that the government has to show an intent to do. And again, that is the issue. I'm sorry, Judge. Can you say that the point you're trying to make is that they didn't intend to harm the victim because he was trying, they were just trying to use him to get the dealer. And if they didn't have the intent to commit violence, then it, it's, it doesn't fit the elements of the crime. Judge, if our brief has given you that impression, then we have misspoke and miscommunicated. No. Could I just clarify? You're now saying that your argument is that there has to be an intent to take the car. Yes, Your Honor. That is exactly correct. Did you argue this below anywhere? It was, I don't know that it was put in that particular way below. It was the subject of the, of the motion to dismiss all charges because of the lack of proving all elements. But it was, I'm going to say intuited. The, the way that it was presented below specifically was that the kidnapping and the carjacking merged because the focus was the kidnapping and not the carjacking. I I'm not highlighting that particular argument because I think that's poorly put and it's not the, the, the argument in terms of the in, in terms of the motion to dismiss for substantial evidence really did cover everything that could possibly have come up. Well, I'm looking at your summary of the argument. You say Benson and Hill both moved the district court to dismiss the carjacking charge because they lack the requisite intent to cause death or serious bodily injury. And that's what it says. It doesn't say anything about the intent to steal the car. And on page 13, when you did, the heading of your argument is did the district court err by denying the motion to dismiss where the government failed to prove that either defendant had the intent to cause death or serious bodily harm? That's what you said. Okay. And judge, I apologize if it takes me just a moment here to get to my papers. And that would fit pretty well with your argument that what they wanted was what was in his head. So why would they hurt him if they wanted what he knew? Yeah, that, and well, and that clearly was the case. I guess I would call the court's attention to, you know, I'm almost out of time. So let me call the court's attention to my reply brief. And, and I hope that that will be more able to clarify what the argument actually is. Well, assuming that your argument is as you framed it in the brief, can you briefly address it? Just briefly tell me what, tell us what it is. Okay. Judge Duncan, I would characterize it this way. I would say that because carjacking requires the object of the of the robbery to be the vehicle and the object of the robbery or the object of the action was to get the information to find out where the spot was so they could go there and find Mr. Hames and then do whatever they were going to do with him by there. Therefore the the government had not proven that element. That is that the car and stealing the car was the object of the of the intention of the defendants. But that doesn't address her question, which is, okay. I thought your argument seems to be that he didn't have the intent to cause death or serious bodily harm. Isn't your argument that they didn't want to hurt the guy because he knew where they could go to get the big dealer with them with all the money and all the drugs and all that stuff. Yes. So they weren't, they didn't have that intent when they took the car. Therefore it's not a carjacking. That's your argument. And it doesn't have anything to do with whether they took the car or not. It has to do with the intent to commit violence. Judge Gibney, I apologize if I'm a little slow this morning, but I think you have accurately summarized it. I do believe that. Thank you, Judge. Can I ask him a question about something else? Of course. Would you address the question about the, the, the life sentence that he got and the fact that he got a life sentence on other things, therefore it's really kind of a moot point. Yeah, I'd be glad to. Judge Gibney, I know that there are a number of cases, well, I cited in my brief cases that stand for the proposition that that a sentence in excess of the statutory maximum is an illegal sentence. I believe the government and I'm sure Ms. Ray will elaborate on that if, if that's necessary. I believe their argument isn't so much that that this court can just ignore an illegal sentence, but in the context of plain air, which I think is where she wants to focus on that the court has the opportunity or the discretion not to notice that that this sentence is improper. What do you think about that? I believe Judge, this court has on many occasions said that it's foreseeable, reasonably foreseeable that the law is going to change. And at some point in time, it's very possible that the that some element of the kidnapping offense, which created a mandatory life sentence would conceivably change and make that not a mandatory life sentence. And these other life sentences come by way of the cross reference and the guidelines. And I think it would be a horrible miscarriage of justice if if it could happen that the original mandatory life sentence went away. But this court, which has also has a strong precedent of favoring the finality of judgments and preferring not to come back and revisit judgments down the road when it's not been mandated by the Supreme Court, then ended up sticking these people with life sentences that that did not have to be that way. The remedy is, is a very simple fix. There are no new hearings. It's just simply asking the district court to go back and correct a piece of paper to to issue the statutory judgment in in the cases where it's exceeded its bounds. And then and well that's, that's what the remedy we'd ask for. You just can't sentence somebody on a sheet of paper. You'd have to go back and hear an allocution again and that sort of thing, wouldn't it? No, generally in in cases like I'll, I'll refer the court back to the recent drug reduction cases. My experience as a trial lawyer has been that typically that the district court judges just simply go back, review the paperwork and assign whatever the proper sentence is. I think that would be the appropriate resolution in this kind of case. Thank you. Unless there are any other questions, then I'll step back. Thank you. May it please the court, Amy Ray for the United States. I think I'll begin by just addressing some of the specific questions and and maybe beginning Judge Gibney with your question at the end. This court in both United States versus Ellis and United States versus Foster, which are cited in my brief, tell us that a defendant cannot show that an error even imposing a sentence above a statutory maximum affected his substantial rights where there are concurrent sentences that are either of equal length or higher. And so that is, that's published authority in this court that says that the defendant cannot show an effect on the substantial rights under the plain error standard of review. If this court somehow were able to ignore that that authority and with all due respect, I don't, I don't think it probably can, but if it could on remand, it would just be entry of amended judgment, not under the authority of the crack amendment cases that I think Mr. Gillette was referring to. But just generally if the district court chose a life sentence, then this court would presume that it could just reduce that sentence to the 10 year statutory maximum of 10 years. But again, I don't think that's the appropriate result. Now let's go back to Mr. Howard's argument about Exhibit 11D. I want to begin because I don't believe the jury, the district court ever excluded 11D. If you look at the pages that Mr. Howard refers to, which are pages 124 and 433 of the joint appendix, the United States offered 11E and it offered a series of exhibits. It never actually offered 11D. And the court didn't exclude that one. What the court excluded was, correct. Absolutely. But I just want to be clear that that, that decision had not been made. The court notes that it would have found it admissible, although I don't know that that's legally relevant to the question of whether it was prejudicial, but it never excluded that, that it excluded a different photograph where the whole body of Mr. Hames was on the ground post the event and you know, outside of the car and it excluded that photograph, but that was different from 11D. Now, the question is whether or not the United States has shown that the very brief display, an inadvertent display of 11D prejudiced the defendants. And for all of the reasons that were reflected by the court's questions, but just very, very briefly the evidence of their guilt was overwhelming based on eyewitness testimony and the very similar photograph in 24K, exhibit 24K was admitted. The district court gave appropriate instruction to the jury to disregard 11D in its entirety. And there's really no evidence that even juror six was affected, that her judgment as to the guilt or innocence of these defendants was affected, which is best evidenced by the fact that they decided not to exclude her when the district court gave them the opportunity at the close of all of the evidence and before the jury began deliberating. So the United States has satisfied its burden to show that that mistake was harmless. On the carjacking, there is no support whatsoever that I've seen. I've not, that argument was not presented to this. I don't believe to this court that you have to have an intent to steal the car. I've never heard that argument. I don't think it is. There's anything. What about the argument that's in the brief? Sure. Yeah. The argument that's in the brief, the best response I think that I have to that is United States versus Robinson. It's 2017, a decision by this court where a judge Wilkinson recognizes that, look, the jury could have perhaps drawn the inference that they intended to get Patterson alive and well and able bodied to the Windsor Hill apartments. And therefore, at the time that they took the car, they had no intent to injure or to kill him if he did not comply. Maybe the jury could have drawn that inference, but the jury could also properly infer that they absolutely would have injured him seriously or killed him. And Mr. Gillette really give makes the point that it's possible that once they got the information, they would have gone without him and, and affected the same robbery or that they would have just been so angry. They would have shot and killed him. These two defendants were clearly capable of of great violence that day. They also could have simply maimed him and shot him in the leg, shot him somewhere else or whacked him upside the head, pistol whipped him a little bit. That would have been serious bodily injury and they could have achieved the objective they say that is clear from the evidence. But obviously the jury doesn't have to accept their theory of what the defendants had in their mind about what they would or would not have done. Based on this evidence, you have two defendants who have pointed a firearm directly at the head of the Patterson. They've kept it trained on him as they ordered him into the car and they told him that if he did not do what they wanted, they would kill him. So I think the jury could reasonably infer that they had the intent at the time they took the car. And that's the only time that actually matters for purposes of the carjacking offense. I think I should also address quickly the 924C and 924J issue. And one of the reasons I should do that is because I don't think I did a very capable, I didn't think I did a terrific job in the brief on a couple of points. One of them is that Hill actually did not receive a consecutive sentence for 924J. If the court looks at his judgment, which is on page 2056 of the joint appendix, that judgment, for whatever reason, the district court actually imposed the 924J life sentence to run concurrently with the kidnapping, kidnapping conspiracy and carjacking offenses. I'm not sure why the court did that. We didn't appeal it. So he did not receive under any circumstances an unlawful sentence in terms of double jeopardy issue. I would also note that the verdict form, and those are on pages about 1930 to 1935, those verdicts forms have special verdicts where the court, the jury found every single one of those predicates supported both the 924C and the 924J. In other words, we have multiple predicates supporting each of those offenses. So there would be no error in imposing a sentence on both the 924C and the 924J because they would be supported by different offenses. Under Blockburger, in other words, you've got the drug trafficking offenses, you've got kidnapping, you've got carjacking, and you've got Hobbs Act robbery. All of those supported them. So you could impose one for, for example, the drug trafficking offense, 924C, and you could do 924J to support the Hobbs Act robbery. So under a plain error standard of review, there was no error. It was not plain. There's a circuit split on that issue. As the 11th circuit recognized in Campo and the 5th circuit in Gonzalez. So if there are no further questions, the United States respectfully requests that this court affirm the judgment of the district court. Thank you, Your Honors. And if I may just briefly in rebuttal, first with respect to the, to the image 11A, although I believe Ms. Ray is correct that 11D was the one, the image that the judge specifically excluded, that that series of pictures characterized by 11, the number 11 were all taken on the scene, at the scene after the emergency medical responders had performed some life, hopefully they would have said lifesaving measures. And in the process of doing that, they did in fact change the position and the location and maybe introduce some additional trauma to the victim. Although the judge said later on, well, maybe I would have admitted it. I think that that probably, he would have used the same analysis that he did with the 11D case and say that that image was a little bit more grisly than maybe it would otherwise have been because of the extraordinary measures that the emergency medical people had taken it on. So I believe that that, that was a more, a more provocative picture than that was necessary. With respect to the 924C or what I'm going to call the double jeopardy issue, the lesser included offense issue. It's not a question of whether or how Mr. Hill or Mr. Benson was, were sentenced for 924J. That's the greater offense. The lesser included offense is 924C. And so the fact that they were, that the court district court entered judgment on 924C is what we're complaining about. In the overall scheme of things, as Ms. Ray said, that doesn't enhance in great measure,  it still is an error. And we believe one that this court can fix. There is not a circuit split in our opinion. The only circuit that could conceivably be said to go in a different direction is the 11th. And the issue of double jeopardy was not presented to the 11th circuit. The issue in that particular case was whether 924J was a sentencing factor, as the government in that case presented it. And the 11th circuit said no, 924C is one kind of offense and 924J is another kind of offense. The 11th circuit was correct. They are two separate offenses. However, what the 11th circuit did not deal with and what every other circuit that has considered the issue has said is that 924C is a lesser included. That is to say in Blockberger terms, there is no additional element that has to be proved in 924J beyond what's already in 924C. So 924C is the lesser, 924J is the greater. But Ms. Ray has pointed out that the jury was given a series of different factual predicates for these offenses. And so you don't have the same set of facts tied into the offense. So how can you say that it's a lesser included offense if you've got different factual predicates? So my recollection of the jury record, I do not have that in front of me right now, is that they were given a list of predicates, but they weren't asked to choose which one. So they may have in fact sentenced, found a verdict of 924C on the basis of the drug offense and a 924J on the violence offense, but I don't believe that that was in the jury verdict. So it's impossible to tell on what basis they entered judgment or they came back with a verdict in those particular cases where I guess, for lack of a better way to phrase it, where the jury verdicts are, where the jury verdicts are ambiguous, I guess that'd be the way I'd phrase it, then one needs to give the defendant the benefit of the doubt and say that these were 924C and 924J were based on the same predicates and treat them that way. I see that in United States v. Robinson, going back to the carjacking issue, although this case did in Robinson say, or this court did in Robinson say that there can be a jury question about the intent to impose violence. We only send it to the jury if there are facts that would support the intent to do violence. I think in this particular case, it was clear that there was no fact that the jury could look at to say that they were intending to harm and thereby give up the opportunity to find Mr. Hames and to affect their robbery of him. And therefore we'd say that there wasn't enough evidence to submit it to the jury. It should not have been a jury issue. It was in fact a matter of law that was properly brought to the judge in the motion to dismiss. Your time has lapsed. Did you want to briefly conclude or? Judge, I believe I have said everything in my notes. Thank you so much for your patience. Thank you very much. And we note Mr. Gillette that you and Mr. Howard are court appointed. Thank you very much for your service to the court. I'll ask the courtroom deputy to adjourn court for the day and we will come down and group council. Honorable court stands adjourned until tomorrow morning.
judges: Allyson K. Duncan, Albert Diaz, John A. Gibney Jr.